IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MELVIN PINAILUA HO,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>ANDREW M. SAUL, Commissioner of<br>Social Security,<br><br>　　　　　Defendant. | CIV. NO. 20-00149 JMS-RT<br><br>ORDER AFFIRMING DECISION OF<br>COMMISSIONER OF SOCIAL<br>SECURITY |

**ORDER AFFIRMING DECISION OF COMMISSIONER OF
SOCIAL SECURITY**

**I. INTRODUCTION**

Plaintiff Melvin Pinailua Ho ("Plaintiff") seeks review under 42

U.S.C. § 405(g) of a determination by the Commissioner of Social Security

("Defendant") denying his application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1382c.  ECF

No. 1.  He argues that the administrative law judge ("ALJ") committed legal error

by (1) failing to provide the requisite "specific, clear, and convincing" reasons for

discounting his oral and written testimony; and (2) failing to consider the disabling

side effects of his medication.  *See* ECF No. 21 at PageID # 835.  The court

disagrees.

As set forth in detail to follow, the ALJ's decision is supported by substantial evidence and is free from legal error.  Most of the testimony Plaintiff argues the ALJ failed to consider was too vague to meaningfully factor into the ALJ's analysis and, in any case, the ALJ's determination was not inconsistent with that testimony.  Further, to the extent the ALJ did discount some of Plaintiff's testimony, he provided sufficiently specific, clear, and convincing reasons for doing so.  Finally, the ALJ had no obligation to consider the side effects of Plaintiff's medication because Plaintiff never alleged that these side effects contributed to his disability.  The ALJ's Decision is AFFIRMED.

## II.  **BACKGROUND**

On June 30, 2016, Plaintiff applied for SSI payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1382c, alleging disability as of December 29, 2015.[1]  ECF No. 17-6 at PageID # 224.  Plaintiff completed and submitted a "Disability Report" and a "Function Report" along with his application.  ECF No. 17-7 at PageID # 235.

In the Disability Report, Plaintiff identified two conditions as limiting his ability to work: congestive heart failure and a lower back problem.  *Id*. at PageID # 240.  In the Function Report, Plaintiff explained that due to his heart

---

[1]  Although Plaintiff asserted that his disability began on December 29, 2015, SSI is not payable prior to the month following the month in which the application was filed (July 2016 in this case).  20 C.F.R. § 416.335.

condition, his doctor had prohibited him from lifting more than 40 pounds. *Id.* at PageID # 248. And, he explained that due to his lower back condition, he cannot walk far distances and must take a break every 20-30 feet. *Id.* at PageID ## 249, 253. He did, however, note, that he tries to walk every day after taking his medication in the afternoon. *Id.* at PageID # 249. He further explained that his lower back condition makes it difficult for him to bend to dress and wash. *Id.* Plaintiff reported that he can do household chores including preparing simple meals, light yard work, laundry, and dishes, but that these tasks take him "15-45 min[utes] because of the pain." *Id.* at PageID # 250. By contrast, he reported that his health conditions do not impede his ability to sit or to pay attention. *Id.* at PageID # 253. Finally, he listed four medications that he is taking and the side effects he experiences—each of the four medications causes dizziness, one medication also causes drowsiness, and a different medication also causes blurred vision. *Id.* at PageID # 255.

On August 12, 2016, the Social Security Administration denied Plaintiff's SSI application. ECF No. 17-4 at PageID ## 141-42. Plaintiff then filed a request for reconsideration, *id.* at PageID # 144, which was denied on March 9, 2017, *id.* at PageID # 154-55. On March 29, 2017, Plaintiff filed a request for an administrative law hearing. ECF No. 17-5 at PageID ## 167-68. A hearing was

held before the ALJ on October 22, 2018, *see id.* at PageID # 184, at which

Plaintiff and a state vocational expert testified. *See* ECF No. 17-3 at PageID # 103.

At the hearing, Plaintiff testified that he was "taken out of work"

because he was suffering from recurring "episodes" in which "half of my vision

goes off and . . . I have a hard time moving my fingers." ECF No. 17-3 at PageID

# 114. He also testified that his doctor had prohibited him from lifting more than

15 pounds. *Id.* at PageID ## 109-10. And he testified that he cannot walk more

than 20 feet or stand for extended periods of time without taking a break because

of his back pain. *Id.* at PageID # 111-13. When asked if he has trouble sitting in a

chair, Plaintiff responded: "My back hurts." *Id.* at PageID # 116. And when asked

how long he can sit before it starts hurting, he did not give a time estimate,

responding instead: "Like, right now, I could sit here, and then I have—I'd get up

to stand, like, level out the pain, I guess, you would say." *Id.* at PageID # 117. He

further explained that he was able to sit for the duration of the 45-minute car ride

to the hearing, but that he had to "adjust" himself during the drive. *Id.* When the

ALJ questioned Plaintiff about swelling in his legs caused by his edema, Plaintiff

stated that his doctors had told him to elevate his feet above heart-level "when I get

the chance," but that his doctors had not prohibited him from sitting with his feet

on the floor. *Id.* at PageID ## 118-19. Finally, Plaintiff testified that he

experiences headaches once or twice a day, but that he does not know what causes them.  *Id.* at PageID # 119.

The vocational expert testified next.  He testified that a hypothetical individual who could "lift or carry 15 pounds occasionally and ten pounds frequently; stand or walk for about two hours out of eight, sit for about six hours out of eight; could occasionally climb stairs and ramps; could occasionally balance, stoop, kneel, crouch, or crawl; [and could not be near] hazardous machinery [or] unprotected heights" would be capable of performing "unskilled, sedentary" jobs, such as "addresser," "parimutuel-ticket checker," and "telephone quotation clerk."  *Id.* at PageID ## 121-22.  But the vocational expert testified that those jobs would not be available to a person who needed to sit with their feet elevated "at waist level or above."  *Id.* at PageID # 122.  In addition, he testified that an employee that engaged in "off-task" behavior for more than 5% of the workday on an ongoing basis would "put the job at jeopardy."  *Id.* at PageID # 123.

On December 27, 2018, the ALJ denied Plaintiff's disability claim. ECF No. 17-3 at PageID # 129.  In reaching his decision, the ALJ applied the five-step sequential analysis established by the Social Security Administration to assess disability claims.  This analysis asks:

(1)   Has the claimant been engaged in substantial gainful activity?  If

so, the claimant is not disabled.  If not, proceed to step two.

(2)   Has the claimant's alleged impairment been sufficiently severe to

limit his ability to work?  If not, the claimant is not disabled.  If

so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments,

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to

step four.

(4)   Does the claimant possess the RFC[2] to perform his past relevant

work?  If so, the claimant is not disabled.  If not, proceed to step

five.

(5)   Does the claimant's RFC, when considered with the claimant's

age, education, and work experience, allow the claimant to adjust

to other work that exists in significant numbers in the national

economy?  If so, the claimant is not disabled.  If not, the claimant

is disabled.

---

[2]   The RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  SSR 96-8p, 61 Fed. Reg. 34474-01, 34475 (July 2, 1996).  It "is the most [a claimant] can still do despite [their] limitations."  20 C.F.R. § 416.945(a)(1).

*See id*. at PageID ## 88-89; *see also, e.g.*, *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).  For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the claimant reaches step five, the burden shifts to the Commissioner.  *Id.*

At Step 1, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the application date, June 16, 2016.  ECF No. 17-3 at PageID # 89.  At Step 2, the ALJ found that Plaintiff suffers from "the following severe impairments: chronic systolic heart failure, atrial fibrillation (AF); status-post Watchman device implant; myocardial infarction; Transient Ischemic Attack (TIA), without residuals; hypertension; morbid obesity; edema; lumbosacral radiculopathy [i.e., lower back pain], and; subdural hemorrhage." *Id.* He also found that Plaintiff suffered from hyperlipidemia and gastroesophageal reflux disease, but that these conditions did not rise to the level of severe impairment.  *Id.* at PageID # 90.  At Step 3, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at PageID # 91.

Proceeding to Step 4, the ALJ calculated Plaintiff's RFC to be the following:

> Claimant can lift and/or carry 15 pounds occasionally and 10 pounds frequently; he can stand and/or walk for about 2 hours out of 8; he can sit for about 6 hours out of 8; he can occasionally climb stairs and ramps; he can occasionally balance, stoop, kneel, crouch, and crawl, and; he is limited to no hazardous machinery [including trucks] or unprotected heights, to include no ladders, ropes, or scaffolds.

*Id.* at PageID # 91. Based on that RFC finding, the ALJ found that Plaintiff is unable to perform his past relevant work as a delivery driver. *Id.* at PageID # 96. But, considering Plaintiff's RFC along with his age (44 years old), education (high school), and work experience (truck driving), the ALJ determined at Step 5 that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including as an addresser, a pari-mutuel ticket checker, and a telephone quotation clerk. *Id.* at PageID ## 97-98.

The ALJ therefore concluded that Plaintiff is not disabled and denied his application for SSI payments. *Id.* at PageID # 98. Plaintiff requested that the Social Security Appeals Council review the ALJ's decision, but the Council denied that request and adopted the ALJ's decision as the final decision of the Commissioner. *Id.* at PageID # 73.

Plaintiff now seeks judicial review of the ALJ's decision. ECF No. 1. On appeal, Plaintiff argues that the ALJ erred at Step 5 in finding that Plaintiff was

not disabled because he is capable of undertaking a variety of sedentary, unskilled jobs. *See* ECF No. 21 at PageID # 824 ("The [ALJ] determined Plaintiff, Melvin Pinailua Ho . . . was not disabled at Step 5.  Melvin Disagrees.").  It appears, however, that Plaintiff is actually arguing that the ALJ erred at Step 4 by disregarding Plaintiff's subjective written and oral testimony in calculating Plaintiff's RFC.  *Id.* at PageID ## 824-25.  Specifically, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's testimony as to the severity of his symptoms and as to the side effects of his medication.  *Id.* at PageID # 835.

Plaintiff filed his Opening Brief on January 25, 2021, ECF No. 21. Defendant filed his Answering Brief on March 11, 2021, ECF No. 22, and Plaintiff filed his Reply on March 29, 2021, ECF No. 23.  This matter is decided without hearing pursuant to Local Rule 7.1(c).  *See* ECF No. 24.

### III.  <u>LEGAL STANDARD</u>

A claimant is "disabled" for purposes of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Congress has provided a limited scope for judicial review of the

Commissioner's decision to deny benefits under the Social Security Act. *See* 42

U.S.C. § 405(g); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1098 (9th Cir. 2014) ("For highly fact-intensive individualized determinations like

a claimant's entitlement to disability benefits, Congress places a premium upon

agency expertise, and, for the sake of uniformity, it is usually better to minimize

the opportunity for reviewing courts to substitute their discretion for that of the

agency.") (internal quotation and citation omitted).

Guided by this principle, courts employ "three important rules" when

assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir.

2015). First, courts "'leave it to the ALJ to determine credibility, resolve conflicts

in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler*,

775 F.3d at 1098). Second, courts will "disturb the Commissioner's decision to

deny benefits 'only if it is not supported by substantial evidence or is based on

legal error.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995)). Substantial evidence means "more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d

519, 522 (9th Cir. 2014) (internal quotation and citation omitted). And, third, even

where the ALJ commits legal error, courts uphold the ALJ's decision if that error is

harmless. *Brown-Hunter*, 806 F.3d at 492.  An error is harmless if it is

"'inconsequential to the ultimate nondisability determination'" or if "despite the

legal error, 'the agency's path may reasonably be discerned, even if the agency

explains its decision with less than ideal clarity.'"  *Id.* (quoting *Treichler*, 775 F.3d

at 1099).

## IV.  <u>DISCUSSION</u>

Plaintiff argues that the ALJ committed legal error by failing to

consider his symptom testimony and by failing to consider the side effects of his

medication.  Both arguments fail.

### A.    **Symptom Testimony**

Plaintiff first argues that he "testified to significant, limiting

symptoms he suffers due to his medical conditions" and that the ALJ failed to

properly consider this testimony in reaching his RFC determination.  ECF No. 21

at PageID # 835.

When making an RFC determination, the ALJ must consider both

"objective medical" and "other evidence, including the individual's complaints of

pain and other symptoms."  *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir.

2017) (quoting SSR 96-8p, 61 Fed. Reg. at 34478) (emphasis omitted).  And

where, as here, a claimant has presented "objective medical evidence of an

underlying impairment which might reasonably produce the pain or other

symptoms [alleged]," and there is no evidence of malingering, the ALJ may only "reject the claimant's testimony about the severity of those symptoms by providing specific, clear, and convincing reasons for doing so." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter*, 806 F.3d at 488-89); *see also* ECF No. 17-3 at PageID # 92 (ALJ finding "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms"). "This requires the ALJ to 'specifically identify the testimony from a claimant she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1102). The purpose of this rule is to allow the district court to conduct a meaningful review of the ALJ's decision making process, and thus to ensure that the claimant is not arbitrarily denied benefits. *Brown-Hunter*, 806 F.3d at 492 ("A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.").

Here, Plaintiff argues that the ALJ committed legal error by rejecting his symptom testimony. But much of the testimony Plaintiff points to, the ALJ did not, in fact, reject at all. And where the ALJ did reject Plaintiff's symptom testimony, he supplied clear, convincing, and specific reasons for doing so.

///

///

12

### 1.   *ALJ Did Not Reject Much of Plaintiff's Symptom Testimony*

Plaintiff first argues that the ALJ failed to consider his testimony that "he could only sit for so long before he needed to stand up."  ECF No. 21 at PageID # 839.  Specifically, Plaintiff testified in response to the ALJ's inquiry as to how long he could sit that "[l]ike, right now, I could sit here, and then I have— I'd get up to stand, like, level out the pain, I guess you would say."  ECF No. 17-3 at PageID # 117.  He further explained that he sat through a 45-minute car ride to attend the hearing, but that he had to adjust himself throughout the journey.  *Id.*

Plaintiff's general statements that he occasionally has to stand to "level out the pain" and that he was able to sit through a 45-minute car ride provide no concrete information about how severely his pain affects his ability to sit or how long he is able to sit.  The ALJ had no obligation to consider this vague testimony when making his RFC determination.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that an ALJ may discount testimony that is too vague to support a finding of disability); *Stephen N. v. Saul*, 2020 WL 7873068, at *3 (D. Or. Dec. 7, 2020) (same).

Nevertheless, the ALJ did, in fact, expressly reference this testimony in his decision, stating: "[Plaintiff] testified that his back hurt when he sat, but he also testified that he sat for 45 minutes in a car to attend the hearing."  ECF No. 17-3 at PageID # 92.  And the ALJ's RFC determination that Plaintiff can sit for

about six hours out of every eight is not at all inconsistent with Plaintiff's statements regarding his sitting ability.  Rather, in the absence of more concrete testimony from Plaintiff, the ALJ properly considered the statements Plaintiff provided, along with the objective medical evidence indicating Plaintiff's lower back pain is manageable through physical therapy, stretching, and over-the-counter medication in making his RFC determination.  ECF No. 17-3 at PageID # 95; *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (explaining that the ALJ need not provide specific, clear, and convincing reasons for rejecting testimony where that testimony is consistent with the RFC); *Anderson v. Berryhill*, 2018 WL 1517206, at *6-7 (W.D. Wash. Mar. 28, 2018) (same).

Similarly, Plaintiff next argues that the ALJ failed to consider his testimony that his doctors have advised him to elevate his feet above heart-level to help with his edema.  Plaintiff testified that his doctors did not tell him how often he should elevate his feet, but had advised him to elevate them "[j]ust . . . when I get the chance."  ECF No. 17-3 at PageID ## 118-19.  He also testified that his doctors had not prohibited him from sitting with his feet on the floor.  *Id.* at PageID # 119.  Again, this testimony is too vague to allow the ALJ to draw a conclusion about how many hours in a day Plaintiff was required to elevate his feet.  *See Tommasetti*, 533 F.3d at 1040.  But, again, the ALJ nevertheless specifically referenced this testimony in his determination, stating that Plaintiff

"testified that he sometimes had swelling in his lower legs" and that "his doctors had told him . . . to elevate his feet when he had the chance."  ECF No. 17-3 at PageID ## 91-92.  And, again, because Plaintiff did not provide an estimate for how many hours in a day he should be elevating his feet, the ALJ's RFC determination that Plaintiff can sit for 6 hours out of every 8 is not inconsistent with this testimony.  *See Turner*, 613 F.3d at 1223.  Moreover, as the ALJ noted, the objective medical evidence showing that Plaintiff's edema is "mild" or "trace," and that it is well-controlled by medication, supports the RFC determination and is consistent with Plaintiff's testimony that it was only necessary to elevate his feet when he gets the chance.  ECF No. 17-3 at PageID # 93.[3]

Finally, Plaintiff argues that the ALJ failed to properly consider his written testimony that "when I don't do anything it[']s because of my pain in my back and sometimes in my chest" and that "if I don't go [outside] it[']s because of pain."  ECF No. 17-7 at PageID ## 251.  But, again, these statements provide no information about how frequently or for what duration pain limits Plaintiff in these ways.  Without more information, the ALJ could not reasonably be expected to draw a conclusion from these statements, and so it was not legal error to fail to

---

[3]  Plaintiff argues that his testimony regarding elevating his feet is "case dispositive" because the vocational expert testified that a person who was required to elevate their feet above heart-level could not engage in the jobs he had identified as possible for Plaintiff to perform.  ECF No. 17-3 at PageID # 122.  But as the Commissioner rightly points out, the doctors' instructions that Plaintiff should elevate his feet when he has the opportunity does not suggest that he would need to elevate his feet during the workday.  *See* ECF No. 22 at PageID # 872.

address them in his decision. *Tommasetti*, 533 F.3d at 1040. Moreover, that the ALJ did not specifically address these particular statements in detail is not a legal error. The Ninth Circuit has repeatedly held that ALJs are not required to perform a "line-by-line exegesis of the claimant's testimony, nor . . . to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277; *see also Young v. Saul*, 2021 WL 515339, at *1 (9th Cir. Feb. 11, 2021) (mem.) ("The ALJ [is] not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony."). The ALJ need only accurately summarize a claimant's testimony and supply specific, clear, and convincing reasons if the ALJ opts to reject portions of that testimony. The ALJ satisfied that standard here.

### 2. *The ALJ Properly Rejected Certain Symptom Testimony*

The ALJ rejected other aspects of Plaintiff's symptom testimony, but supplied sufficiently specific, clear, and convincing reasons for doing so. First, Plaintiff argues that the ALJ improperly rejected his testimony regarding how long he can stand or walk without pain. At the hearing, Plaintiff testified that he could walk only 20 feet at a time before taking a break due to pain and that while standing he often must "lean on something" to support himself. ECF No. 17-3 at PageID # 112. And in his written testimony, Plaintiff explained that he goes shopping for food and other necessities but that he tries "to get [it] all done together so it takes a few hours because of the breaks I take for pain." ECF No.

17-7 at PageID # 251.  Likewise, he explained that he is able to undertake household activities such as preparing simple meals, doing light yard work, and gathering clothes for laundry, but that these activities take him "15-45 min[utes] because of the pain."  *Id.* at PageID # 250.

The ALJ rejected this testimony based on (1) findings in the objective medical record showing that Plaintiff's "doctors have consistently observed normal stance and gait" as well as "full range of motion"; (2) the mild course of treatment prescribed to deal with Plaintiff's lower back pain, consisting primarily of physical therapy and over-the-counter medication; and (3) evidence that Plaintiff's pain is well-managed by this mild treatment regime.  ECF No. 17-3 at PageID # 95.  Each of these reasons provide an appropriate basis for rejecting a claimant's symptom testimony.  *See, e.g.*, *Burch*, 400 F.3d at 681 (explaining that inconsistency with objective medical evidence and a record of minimal or conservative treatment are appropriate reasons for rejecting a claimant's symptom testimony).

Further, although the ALJ did not explicitly state that he rejected Plaintiff's testimony for these reasons, the linkage between the two is readily discernable.  In summarizing Plaintiff's testimony, the ALJ specifically discussed Plaintiff's oral and written statements about how his back pain impeded his ability to stand and ambulate.  ECF No. 17-3 at PageID # 92.  The ALJ then stated that "[a]fter careful consideration of the evidence, I find that claimant's medically

17

determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported by the medical evidence as a whole for the reasons explained in this decision." *Id.* Although, without more, this "boilerplate statement" would be insufficient, *see, e.g.*, *Treichler*, 775 F.3d at 1103, *Garcia v Saul*, 2021 WL 1124292, at *5 (D. Haw. Mar. 24, 2021) (quoting *Lambert*, 980 F.3d at 1277), the ALJ then proceeded to set out those reasons by reviewing the objective medical evidence and opinion evidence regarding each symptom that Plaintiff testified about. *Id.* at PageID ## 92-96.  As part of this review, the ALJ discussed Plaintiff's back pain and set forth the reasons for his finding that Plaintiff's reported pain did not limit his ability to engage in sedentary work, including both evidence from the medical record and opinion evidence showing that Plaintiff's pain did not impede his movement to a significant degree and was well-controlled through a mild treatment regime. *Id.* at PageID ## 95-97.  Even if the ALJ's reasoning could have been set forth more explicitly, the court will not "fault the agency merely for explaining its decision with 'less than ideal clarity'" so long as the ALJ has "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1099).  That standard has been met here.

In short, the ALJ adequately considered Plaintiff's written and oral symptom testimony in making his RFC determination.  He accurately summarized Plaintiff's testimony and produced findings largely consistent with that testimony. And, where the ALJ rejected Plaintiff's testimony, he supported that decision with specific, clear, and convincing evidence.  This is all that was required.

**B.    Side Effects of Medication**

Next, Plaintiff argues that the ALJ erred by failing to consider the side effects of his medication.  In response to a question prompt on his Function Report from 2016, Plaintiff reported that he experiences dizziness as a side effect of four medications, as well as drowsiness as a side effect of one and blurred vision as a side effect of another.  ECF No. 17-7 at PageID # 255.  This single notation is the only reference in the entirety of Plaintiff's testimony to medication side effects. Plaintiff's testimony contains no elaboration as to the frequency or severity of the side effects he experiences, nor is there any assertion that these symptoms contribute to Plaintiff's alleged disabilities.  Given the paucity of information about medicinal side effects in the record, let alone an argument from Plaintiff that they cause or contribute to his disability, the ALJ need not have considered these side effects in making his RFC determination.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that the ALJ properly excluded side effects from consideration when the record contained only "passing mentions of the side

effects" and no evidence of side effects severe enough to interfere with the claimant's ability to work).

Moreover, the ALJ did, in fact, consider isolated incidents of dizziness and blurred vision reported in Plaintiff's medical record as occurring in February, April, July, September, and December 2016 and February 2017.  ECF No. 17-3 at PageID # 94.  And, although noting that these symptoms were "transient" and that the medical record documented far more instances in which Plaintiff denied experiencing these symptoms, the ALJ nevertheless accounted for dizziness and vision issues in making his RFC determination by limiting Plaintiff to no work around hazardous machinery (including trucks) or unprotected heights, including ladders, ropes, or scaffolds.  *Id*.  The argument that the ALJ committed legal error by failing to consider the side effects of Plaintiff's medication is without merit.

///

///

///

///

///

///

///

## V.  <u>**CONCLUSION**</u>

For the reasons discussed above, the ALJ's decision is AFFIRMED.

The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 07, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Ho v. Saul*, Civ. No. 20-00149 JMS-RT, Order Affirming Decision of Commissioner of Social Security

21